**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
(EASTERN DIVISION)**

| | |
|---|---|
| UNIVERSAL SPORTS AND ENTERTAINMENT GROUP, LLC, | ) ) ) |
| Plaintiff, | ) CASE NO. 1:05CV2141 ) ) |
| v. | ) JUDGE DONALD C. NUGENT ) |
| MORGAN STATE UNIVERSITY and B&W SOLUTIONS, INC. | ) ) ) MEMORANDUM OPINION |
| Defendants. | )      AND ORDER ) ) |

This matter comes before the Court upon Defendant Morgan State University's ("MSU") Motion to Dismiss (ECF #11) and Defendant B&W Solutions, Inc.'s ("B&W") Motion to Dismiss First Amended Complaint or, Alternatively, Motion to Transfer Venue. (ECF #13). After careful consideration of the pleadings and a review of all relevant authority, both Motions to Dismiss are hereby GRANTED.

**STANDARD OF REVIEW**

On a motion brought under Fed. R. Civ. P. 12(b)(6), this Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. See Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808 (3rd Cir. 1990).

In evaluating a motion for dismissal under Rule 12(b)(6), the district court must "consider the pleadings and affidavits in a light most favorable to the [non-moving party]." Jones v. City of Carlisle, Ky., 3 F.3d. 945, 947 (6th Cir. 1993) (quoting Welsh v. Gibbs, 631 F.2d 436,

439 (6th Cir. 1980)).  However, though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations.  See City of Heath, Ohio v. Ashland Oil, Inc., 834 F.Supp 971, 975 (S.D.Ohio 1993).

This Court will not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41 (1980).  In deciding a Rule 12(b)(6) motion, this Court must determine not whether the complaining party will prevail in the matter but whether it is entitled to offer evidence to support the claims made in its complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**FACTS**[1]

Plaintiff, Universal Sports and Entertainment Group, LLC ("Universal") has filed an action alleging breach of contract against MSU, a state university located in Baltimore, Maryland, and alleging tortious interference with contract against B&W, a sports promotion company located in Oxon Hill, Maryland.

Universal alleges that it entered into an oral contract with Defendant MSU on May 20, 2005 under which MSU agreed to participate in the "2005 Charm City Football Classic" on October 8, 2005 at M&T Field in Baltimore.  MSU allegedly agreed that its football team would play a home game against North Carolina A&T University as part of the Charm City Classic.

---

[1] The facts as stated in this Memorandum and Order are taken from the Amended Complaint and should not be construed as findings of this Court.  In a motion to dismiss, the Court is obligated, for the purposes of that motion, to accept as true the facts set forth by the non-moving party, in this case, the Plaintiff.

Universal claims that it agreed to promote MSU in the event in exchange for the exclusive rights and interests in MSU's participation in the Charm City Classic event.  According to Universal, the May 20, 2005 agreement was "memorialized" in a writing which was attached as Exhibit A of Plaintiff's First Amendment Complaint.[2]  Universal claims that Exhibit A shows that it promised to compensate MSU with $105,000, to be paid in two installments; to provide a set number of complementary admission tickets for MSU administration, personnel, and students, as well as for the opposing team; and to provide parking passes for MSU administration.  In the alleged agreement, MSU also agreed to have the university's band participate in a promotional battle of the bands event on October 7, 2005.   However, the vast majority of the language of the document, including all material terms of the contract, appear to have been struck from the contract, and the language indicates that the document is a draft under negotiation, and not a final memorialization of an agreement.  The writing attached as "Exhibit A" is not executed by either party.

On or about July 1, 2005, Universal discovered that Defendant MSU had signed an agreement with a different promotions company, B&W.  Under that agreement, MSU played the October 8, 2005 game against North Carolina A&T in Landover, Maryland as part of the "Prince George's Classic."   Universal claims that this constituted a breach of their oral agreement with MSU and that B&W knew of Universal's prior agreement with MSU when it entered into negotiations with MSU for rights to that game.  Universal claims that as a result of MSU's failure to play in the "Charm City Classic" event, it suffered damages in the amount of One Million Five Hundred Thousand Dollars ($1,500,000.000).

The Defendants each filed separate Motions to Dismiss pursuant to Rule 12(b)(6) of the

---

[2]

Federal Rules of Civil Procedure for Plaintiff's failure to state a claim upon which relief can be granted.  MSU moved to dismiss the claims against it on the grounds that the claims were barred by the Eleventh Amendment. (ECF #11).  Defendant B&W argued three grounds for dismissal in its Motion To Dismiss: (1) Plaintiff failed to demonstrate the existence of a contract between Plaintiff and Defendant MSU; (2) Plaintiff failed to demonstrate that B&W tortiously interfered with any existing contract between Plaintiff and Defendant MSU; and (3) there are insufficient minimum contacts between Defendants and the State of Ohio for this Court to retain jurisdiction over Defendants.  (ECF #13). Universal filed a consolidated Brief In Opposition to the Defendants' Motions To Dismiss, and both Defendants filed Reply briefs.  (ECF #33, 34, 37).

## ANALYSIS

I.  **MSU's Motion to Dismiss**

Defendant MSU moves to dismiss all claims asserted by Plaintiff on the ground that the suit is barred by the Eleventh Amendment of the United States Constitution.  The Eleventh Amendment states that "the Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any foreign State." U.S. Const. Amend. XI.  The effect of the immunity granted by the Eleventh Amendment is to prohibit suits against any state in federal court unless the state has consented to suit.  Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996).  Immunity extends to entities that are arms of the state.  See Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355-56, 39 L.Ed.2d 662 (1974).

There is no dispute that MSU has not consented to be sued in federal court.  The question

before the Court, therefore, is whether the university is a state instrumentality for purposes of the Eleventh Amendment.  In order to determine whether MSU is to be considered an extension of the state, this Court must consider two fundamental concerns underlying the Eleventh Amendment: first, that federal court judgments should not deplete the states' treasuries, and second, that the inherent dignity and sovereignty of the states must be preserved.  Hess v. Port.-Auth. Trans-Hudson Corp., 513 U.S. 30, 39, 115 S.Ct. 394, 400, 130 L.Ed.2d 245 (1994).

The impact a judgment against the entity being sued would have upon the state's treasury largely determines Eleventh Amendment immunity.  See Regents of the University of California v. Doe, 519 U.S. 425, 430, 117 S.Ct.900, 137 L.Ed.2d 55 (1997) ("Of course, the question whether a money judgment against a state instrumentality or official would be enforceable against the State is of considerable importance to any evaluation of the relationship between the State and the entity or individual being sued.").  MSU was created by the Maryland General Assembly as "the State's public urban university." Md. Code Ann., Educ. § 14-101(a)(2).   All of MSU's property is considered property of the State. Id., §14-104(p)(6)(iii).  It uses Maryland's state financial system for budgeting, accounting, personnel and payroll administration, and its programs require approval by the Maryland Higher Education Commission.  See Id., §14-104(n).  MSU's budget is created by an appropriation from the state, and its finances are controlled by the state legislature. Id., §14-104(e).  All of MSU's expenditures and accounts are audited by the State's legislative auditors. Id., §14-104(o).  MSU cannot borrow money, enter into a contract with a financial institution, or acquire or sell land without the state's approval. Id., §14-104(b) and (p)(6)(i).  As MSU's finances are owned and largely controlled by the state, a financial judgment against the university would be tantamount to a judgment against the state.

Maryland federal courts have also considered whether MSU is immune from suit in federal court under the Eleventh Amendment, and they have come to the same conclusion.  Laney v. Morgan State University, slip copy, 2005 WL 1563437 (D. Md. 2005); Moreno v. University of Maryland, 420 F.Supp. 541, 549-50 (D. Md 1976).  The Fourth Circuit Court of Appeals has specifically found that the Eleventh Amendment bars a breach of contract claim against MSU in federal court.  Persaud v. Morgan State University, 1994 WL 446797 (4th Cir. 1994).  Thus, this Court finds that MSU is a state instrumentality for purposes of the Eleventh Amendment.  Because MSU has not consented to be sued in federal court, Plaintiff's claims against MSU for breach of contract are barred by the Eleventh Amendment, and Defendant MSU's Motion To Dismiss must be granted.

**II.  B & W's Motion to Dismiss**

Defendant B&W moves to dismiss Plaintiff's claims against it, or in the alternative to transfer venue, on three grounds.  First, B&W alleges that Plaintiff has failed to demonstrate the existence of a contract between Plaintiff and MSU.  Second, B&W claims that Plaintiff fails to demonstrate that B&W tortiously interfered with any existing contract between Plaintiff and MSU.  Third, B&W asserts that this court lacks personal jurisdiction over both MSU and B&W.  As the jurisdictional question is a threshold issue, this Court will consider that argument first.

Defendant B&W challenges the jurisdiction of this court on the ground that there were insufficient contacts between B&W and the State of Ohio to satisfy the constitutional requirements of due process.  The Due Process Clause of the Fourteenth Amendment requires that the exercise of personal jurisdiction in each case comport with "traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154,158, 90 L.Ed. 95 (1945).  Due process is satisfied when the defendant "purposefully avails" itself of

the privilege of conducting activities within the forum State," Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), such that it should "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Jurisdiction over a defendant can be general or specific.  A defendant whose contacts with the forum state are "continuous and systematic" is subject to the general jurisdiction of the courts of that state, and can be brought before that forum for any lawsuit.  Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 445-47, 72 S.Ct. 413, 418-19, 96 L.Ed. 485 (1952). Alternatively, a defendant who is *not* subject to the general jurisdiction of a forum state can only be brought before the court if the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum state.  Conti v. Pneumatic Prods. Corp., 977 F.2d 978, 981 (6th Cir. 1992).  Specific jurisdiction does not require a series of continued contacts with the forum state; jurisdiction can instead be premised upon a single act of the defendant. McGee v. International Life Ins. Co., 355 U.S. 220, 222, 78 S.Ct. 199, 200-01, 2 L.Ed.2d 223 (1957).  The Sixth Circuit has set forth a three-prong test for determining whether a defendant is subject to specific personal jurisdiction in Ohio: (1) whether the defendant purposefully availed himself of the privilege of acting in Ohio or causing a consequence in Ohio; (2) whether the cause of action arises out of defendant's activities in Ohio; and (3) whether the exercise of jurisdiction over Defendant is reasonable.  Costaras v. NBC Universal, Inc., 409 F.Supp.2d 897, 905 (N.D. Ohio 2005), citing Nationwide, 91 F.3d at 794.

In the absence of an evidentiary hearing on the issue of personal jurisdiction, an Ohio court must consider the pleadings and affidavits in a light most favorable to the plaintiff.  Id. at 902, citing Advanced Polymer Sciences, Inc. v. Phillips Indus. Servs., 34 F.Supp.2d 597, 599

(N.D. Ohio 1999).  In order to overcome a defendant's challenge to personal jurisdiction, the plaintiff need only set forth a prima facie showing of jurisdiction in the pleadings.  Id.  In the instant case, this Court must examine the allegations contained in Plaintiff's Complaint, and determine whether Defendant B&W could have "purposefully availed" itself of the privilege of conducting activities in Ohio, such that it could reasonably anticipate being haled into court here.

In its First Amended Complaint, Universal simply states that it "negotiated [the] agreement, [with MSU] in part, by telephone and facsimile in Medina County, Ohio."  Plaintiff makes no allegation that Defendant B&W had any contacts with Universal or with the state of Ohio.  The Amended Complaint states only that B&W "is a Maryland Corporation that promotes sporting events and specifically promoted the 'Prince George's Classic' which was held on October 8, 2005 in Landover, Maryland."  There are no allegations that Universal had any contact with B&W, in Ohio or in any other forum.  While Universal alleges that B&W "knew that Morgan State University had entered into an agreement to hold the Charm City Classic in Baltimore, Maryland," it makes no allegation that B&W had any knowledge that Universal was the other party to MSU's agreement, or that B&W knew Universal was domiciled or otherwise connected in any way to the State of Ohio.  Universal raises no allegations that would lead this court to believe that any contacts between Defendants MSU and B&W occurred outside the State of Maryland.  The Amended Complaint does not set forth facts sufficient to create any scenario under which, in the course of B&W's alleged interference with the MSU-Universal agreement, B&W "purposefully availed" itself of the privilege of conducting business in the State of Ohio. Universal has not alleged that B&W had any contact with the State of Ohio; B&W did not partake in any activities in Ohio; and it would be highly unreasonable to require B&W to submit to the jurisdiction of any court in Ohio.  The exercise of personal jurisdiction over B&W in this

case would, therefore, offend traditional notions of fair play and substantial justice.

Because this court lacks personal jurisdiction over Defendant B&W, venue in this Court is improper. Under 28 U.S.C. §1406, this Court has the option of dismissing the case, or in the alternative transferring venue to the District Court of Maryland if such a transfer is proper under 28 U.S.C. §1391 and §1406(a). Because the contract claim upon which this entire action is based has been dismissed and cannot be brought in federal court, this Court finds the proper course of action to be to grant B&W's Motion To Dismiss under 28 U.S.C. §1406(a), and to allow Plaintiff to re-examine whether it wishes to re-file this claim in the Maryland District Court.

## **CONCLUSION**

For the reasons stated above, Defendant Morgan State University's Motion To Dismiss (ECF # 11) is hereby GRANTED, and Defendant B & W Solutions, Inc.'s Motion to Dismiss First Amended Complaint or, Alternatively, Motion to Transfer Venue (#13) is hereby GRANTED. This action is dismissed with prejudice against Defendant Morgan State University, and without prejudice as against Defendant B & W Solutions, Inc.

IT IS SO ORDERED.

      s/Donald C. Nugent  
      DONALD C. NUGENT  
      United States District Judge

DATED: March 31, 2006